IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TRACEY THOMSON TANSY,	Civ. No.  04-6375-AA

    Plaintiff,	OPINION AND ORDER

    v.

NORTH PACIFIC INSURANCE CO.,
an Oregon corporation;
ONEBEACON INSURANCE COMPANY,
a Massachusetts corporation;
KELLY YUDIN; and IGOR YUDIN,

    Defendants.

---

Claud Ingram
P.O. Box 2937
Eugene, OR 97402
    Attorney for plaintiff

Steven E. Lawrence
Johnson Nyburg & Andersen
P.O. Box 4400
Portland, OR 97208-4400
    Attorney for defendant North Pacific Insurance Co.

1    - OPINION AND ORDER

Francis J. Maloney, III
Nicholas L. Dazer
Bullivant Houser Bailey P.C.
300 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR 97204-2089
    Attorneys for defendant OneBeacon Insurance Co.

David Wade
Emily S. Hill
Doyle Gartland Nelson McCleery & Wade, P.C.
44 Club Road, Suite 200
P.O. Box 11230
Eugene, OR 97440-3430
    Attorneys for defendants Kelly Yudin and Igor Yudin

AIKEN, Judge:

On October 29, 2004, plaintiff filed suit alleging negligence, breach of bailment contract, and conversion against Kelly and Igor Yudin, and breach of insurance contract against North Pacific Insurance Co. (North Pacific) and OneBeacon Insurance Co. (OneBeacon). Plaintiff's claims arise from the Yudins' alleged failure to repay loan amounts and store and ship plaintiff's personal property, and North Pacific's and OneBeacon's alleged failure to compensate plaintiff for the value of property stolen from a home owned by the Yudins. Plaintiff seeks money damages from all defendants.

All defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(7) for failure to join Patrick Tansy, plaintiff's husband, as a necessary party, and the Yudins move for dismissal of the claims against them under Rule 12(b)(2) for lack of personal jurisdiction. The motions to dismiss are denied, although the

2   - OPINION AND ORDER

court orders the joinder of Patrick Tansy. Once joinder is effectuated, the court will transfer all or part of this action to the Northern District of California.

## BACKGROUND

On November 20, 2001, plaintiff married Patrick Tansy, the brother of Kelly Yudin. At the time of her marriage, plaintiff alleges that she owned a home in Bend, Oregon, an Acura Legend automobile, a Chevrolet Tahoe Sports Utility Vehicle, several bank accounts, and other personal property. Plaintiff was a resident of Oregon until July of 2002. Currently, plaintiff is a resident and inhabitant of Argentina, where she lives with Patrick Tansy, who is a fugitive. The Yudins are residents and inhabitants of California.

Plaintiff alleges that during the summer of 2001, the Yudins visited plaintiff and Patrick Tansy in Bend, discussed moving to Bend, and placed a deposit on a building lot there. Apparently, the Yudins did not proceed with the purchase.

Plaintiff alleges that upon their return to California, the Yudins telephoned plaintiff in Bend and asked to borrow $60,000 to pay off student loans and credit card debt. Plaintiff avers that she lent the Yudins $30,000 from a bank account in her deceased husband's name and $30,000 from proceeds received after refinancing her home in Bend. Plaintiff mailed the checks to the Yudins in California. The Yudins claim that Patrick Tansy offered to lend

them money, but they do not dispute that they received money from either plaintiff or Patrick Tansy. All payments on the loan were made to plaintiff.

In the spring of 2002, Patrick Tansy entered a guilty plea in United States District Court to one count of felon in possession of a firearm. Plaintiff inquired about transferring her employment to Sheriden, Oregon, where she anticipated that Patrick Tansy would be confined at the Federal Correction Institution. Plaintiff alleges that she also advertised the Acura Legend for sale at the price of $12,500 but was unable to sell it.

In April of 2002, plaintiff alleges that the Yudins visited plaintiff and Patrick Tansy in Bend. Plaintiff alleges that Igor Yudin stated that he could sell the Acura Legend in California for $12,500. Plaintiff delivered the title to defendant Igor Yudin and he drove the car to California. The Yudins state that they purchased the Acura from plaintiff for $4,700, payable in three installments. Plaintiff asserts that she did not agree to sell the car to defendant Yudin.

In July of 2002, the plaintiff and Patrick Tansy traveled to Fresno, California, where Patrick Tansy owned a rental house. During this visit, Patrick Tansy deeded the Fresno house to the Yudins. Plaintiff alleges that she returned to Oregon alone and that Kelly Yudin later called plaintiff and told her that Patrick Tansy had fled the United States. Plaintiff alleges that she

subsequently received a telephone call from Patrick Tansy asking her to join him in South America.

Plaintiff alleges that Kelly Yudin and her cousin, Breane Eineichner, traveled to Bend on their own initiative and helped plaintiff, who was seven and one half months pregnant, pack her personal property. Plaintiff contends that Kelly Yudin agreed to transport plaintiff's Chevy Tahoe and other personal property to Fresno, California, where the Yudins would store the property at the rental house until plaintiff decided whether to remain in Argentina with her fugitive husband. Plaintiff also alleges that she gave Kelly Yudin all of her jewelry and $55,000 in cash.

The Yudins contend that they made no agreement with plaintiff regarding the storage or shipping of her belongings. The Yudins maintain that plaintiff directed Kelly Yudin to donate much of plaintiff's belongings to charity, and that certain items claimed by plaintiff were donated. Also, the Yudins deny that plaintiff gave Kelly Yudin her jewelry or $55,000, but that plaintiff and Kelly Yudin opened a joint safety deposit box. Finally, the Yudins state that they sold plaintiff's Chevy Tahoe for $24,500.

In November 2002, the Fresno rental house was burglarized and some of plaintiff's personal property was stolen. The Yudins claim that they shipped the plaintiff's remaining property to Argentina after the burglary.

Plaintiff alleges that the Yudins failed, refused, and

neglected to ship her property to Argentina, damaging her in the sum of $267,739.52. Plaintiff also claims that the Yudins have not made payments on their loan since July 2002 and that they owe a balance of $35,974.51 plus interest. Finally, plaintiff claims that she left the Yudins with $55,000 in cash, the Acura Legend, and the Chevrolet Tahoe SUV. After deducting payments made by the Yudins in 2003, plaintiff claims that the Yudins owe a balance of $41,515.00 plus interest.

Plaintiff's personal property was insured by defendants North Pacific and OneBeacon under insurance policies purchased in Oregon. North Pacific is an Oregon corporation, with its principal place of business in Oregon. OneBeacon is a Massachusetts corporation, with its principal place of business in Massachusetts. Plaintiff alleges that the property insured by North Pacific had a value of $147,005.95 and that North Pacific owes plaintiff the balance of $125,098.08, which North Pacific refuses to pay. Plaintiff alleges that the property insured by OneBeacon had a value of $142,641.44, which OneBeacon refuses to pay.

Plaintiff alleges that prior to leaving the United States, Patrick Tansy mailed a letter to plaintiff in which he enclosed the deeds to his real property in Oregon and assigned ownership of his personal property to plaintiff. Plaintiff also alleges that after receiving the letter and prior to the burglary at the Fresno house, she removed Patrick Tansy's name from the OneBeacon policy.

Patrick Tansy apparently was not named on the North Pacific policy.

The Yudins move to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(7). The Yudins contend that this court lacks personal jurisdiction over them, because they do not have sufficient contacts with the State of Oregon. Additionally, the Yudins argue that plaintiff failed to join her husband, Patrick Tansy, as a necessary party under Federal Rule of Civil Procedure 19. Defendants North Pacific and OneBeacon join in the Yudins' motion to dismiss on the grounds that plaintiff failed to join Patrick Tansy.

**DISCUSSION**

A. Failure to Join Patrick Tansy as a Necessary Party

Defendants argue that Rule 19 requires joinder of Patrick Tansy as a necessary party to plaintiff's claims. Courts employ a two-step analysis to determine whether a party should be joined as a necessary party to an action. <u>Bakia v. County of Los Angeles</u>, 687 F.2d 299, 301 (9th Cir. 1982). First, the court determines whether "in the person's absence complete relief cannot be accorded among those already parties," or whether

> the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a). If a party meeting these criteria has not

7   - OPINION AND ORDER

been joined, "the court shall order that the person be made a party." Id. If the party who should join refuses to do so, the person may be made a defendant or, in the proper case, an involuntary plaintiff. Id.

Second, if the absent party cannot be joined, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed. R. Civ. P. 19(b). Thus, the court must first determine whether Patrick Tansy is a necessary party under Rule 19(a).

Defendants argue that Patrick Tansy should be joined in this case, because Patrick Tansy has an interest in plaintiff's claims and complete relief cannot be afforded in his absence. Defendants contend that the balance of the loan sought by plaintiff was granted jointly by plaintiff and Patrick Tansy. Additionally, defendants emphasize that property items claimed by plaintiff belonged to Patrick Tansy and, therefore, he has an interest in plaintiff's claims. Defendants argue that Patrick Tansy's absence will impair the ability of the court to afford complete relief and allow Patrick Tansy to bring future claims, subjecting them to multiple and inconsistent obligations. Finally, OneBeacon encourages this court to look upon Patrick Tansy's release of his interests in any claim as a sham that facilitates plaintiff and Patrick Tansy's flight from justice.

Plaintiff maintains that she alone made the loan to the Yudins, and that she is the sole owner of all of the lost property by virtue of Patrick Tansy's releases. Therefore, plaintiff argues that Patrick Tansy is not a necessary part to this action, because he claims no interest in it.

The "'interest' requirement as not limited to a 'legal' interest, but one to 'be determined from a practical perspective, not through the adoption of strict legal definitions and technicalities.'" Aguilar v. Los Angeles County, 751 F.2d 1089, 1093 (9th Cir. 1985) (quoting Lopez v. Martin Luther King, Jr. Hospital, 97 F.R.D. 24, 29 (C.D. Cal. 1983)). Further, "it has been suggested that this interest requirement be broadly construed in order to require joinder of all conditionally necessary parties." Lopez, 97 F.R.D. at 29.

As a practical matter, I find that Patrick Tansy is a necessary party to this action who should be joined if feasible. Defendants point out that many of the property items belonged to Patrick Tansy, and the property was stored at his house in Fresno when it was allegedly stolen. I am not persuaded by Patrick Tansy's alleged waiver of interest in these items, given that plaintiff's suit is premised, in part, on the Yudins' failure to ship these items to her in Argentina where she resides with Patrick Tansy. Further, there are questions as to whether Patrick Tansy claims an interest in the money loaned to the Yudins or in the

claims made under the insurance policies.  Even under the narrowest definition of an "interest relating to the subject of an action," I find that Patrick Tansy has an interest in recovering the value of the property in this case.  Further, complete relief cannot be afforded in this case without Patrick Tansy because of his interest in plaintiff's claims and the substantial risk that the defendants will face multiple or inconsistent obligations.

The next question is whether Patrick Tansy may be joined, and if not, whether plaintiff's claims should be dismissed.  Aside from Patrick Tansy's fugitive status, I find no reason that he cannot be joined in this action.  Although Patrick Tansy is not physically within this district, he is subject to the court's jurisdiction. Indeed, Patrick Tansy is currently subject to an arrest warrant based on his commission of a felony within this district.  <u>See</u> <u>Untied States v. Studley</u>, 783 F.2d 934, 937 (9th Cir. 1986). Further, Patrick Tansy is subject to service of process, as Argentina is a signatory party to the Hague Convention the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters.  <u>See</u> Defendant OneBeacon's Reply Memorandum, Ex. A.  Thus, Patrick Tansy should be joined as a co-plaintiff.

If Patrick Tansy refuses to join as a co-plaintiff, the issue remains whether the court should require Patrick Tansy to be joined an a plaintiff or defendant.  Three requirements exist for "a proper case" in which to make a party an involuntary plaintiff: (1)

the absent party must not be within the court's jurisdiction, (2) he must be under an obligation to join the claim or allow the use of his name in it, and (3) he must have been asked to join as a plaintiff and refused. See Independent Wireless Co. v. Radio Corp., 269 U.S. 459 (1926); Eikel v. State Marine Lines, Inc., 473 F.2d 959, 962 (5th Cir. 1973). Here, I do not find any obligation that requires Patrick Tansy's joinder as a involuntary plaintiff, and further, he is subject to the court's jurisdiction.

When a party who should join as a plaintiff refuses to join a claim, and that party is subject to service of process, the proper course is to join the party as a defendant. Eikel, 473 F.2d at 962; Perkins v. Standard Oil Co. of California, 29 F.R.D. 16, 19 (D. Or. 1961) (quoting Moore's Federal Prac. & Proc., Vol. 3, § 19.06, pp. 2147-2148). Once the party is joined as a defendant, the party's interests may then be realigned as a plaintiff in order to better reflect the party's true interests. Id. Thus, diversity jurisdiction would not be destroyed by joinder of Patrick Tansy as a defendant, because his interests are aligned with plaintiff. Eikel, 473 F.2d at 964.

If Patrick Tansy refuses to join this suit voluntarily, plaintiff shall effectuate service and join Patrick Tansy as a defendant. Should plaintiff fail to serve Patrick Tansy and join him as a defendant, the court shall reconsider whether dismissal is appropriate.

B. Personal Jurisdiction Over Defendants Yudin

The Yudins move for dismissal of plaintiff's claim against them for lack of personal jurisdiction. Plaintiff responds that the Yudins have sufficient contacts with the State of Oregon for the court to assert specific jurisdiction.

Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether the forum state's long-arm statute permits the assertion of jurisdiction and whether assertion of personal jurisdiction violates federal due process. Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives, 103 F.3d 888, 893 (9th Cir. 1996); Chan v. Soc'y of Expeditions, Inc., 39 F.3d 1398, 1404-05 (9th Cir. 1994). The relevant state statute applies even when the cause of action is purely federal. Fed. R. Civ. P. 4(k). Oregon's catch-all jurisdictional rule confers personal jurisdiction coextensive with due process. Or. R. Civ. P. 4L. Thus, the analysis collapses into a single framework and the court proceeds under federal due process standards.

Due process requires that a defendant, if not present in the state, "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Wash., 326 U.S. 310, 315 (1945) (internal quotation marks omitted). Minimum contacts can be demonstrated through facts supporting either general or specific jurisdiction over the defendant. See

Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984). Plaintiff bears the burden of establishing personal jurisdiction through a prima facie showing of jurisdictional facts. Am. Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1986). The allegations of the complaint are accepted as true for purposes of determining jurisdiction. Ziegler v. Indian River County, 64 F.3d 470, 474 (9th Cir. 1995).

Plaintiff relies on specific rather than general jurisdiction in asserting that this court has jurisdiction over defendants Yudin. Specific jurisdiction applies when the cause of action arises directly from a defendant's contacts with the forum state. See Sher v. Johnson, 911 F.2d 1357, 1361 (1990). The Ninth Circuit employs a three-part test to determine whether the exercise of specific jurisdiction comports with due process. Ballard v. Savage, 65 F.3d 1495 (9th Cir. 1995).

First, the defendant must perform some act or consummate some transaction within the forum by which it "purposefully avails" itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of the forum and having "fair warning" that a particular activity may subject it to jurisdiction. See Burger King v. Rudzewicz, 471 U.S. 462, 472, 475 (1985). Second, the claim must be one which arises out of or results from the defendant's forum-related activities. Ballard, 65 F.3d at 1498. Third, the court's exercise of jurisdiction must be

reasonable. Id.; Roth v. Garcia-Marquez, 942 F.2d 617, 620-21 (9th Cir. 1991). Here, I find that plaintiff fails to establish purposeful availment, and I further find that jurisdiction would not be reasonable.

   1. Purposeful Availment

Purposeful availment is shown "if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." Ballard, 65 F.3d at 1498. Although contacts that are "isolated" or "sporadic" may support specific jurisdiction if they create a "substantial connection" with the forum, the contact must be more than random, fortuitous, or attenuated. Burger King, 471 U.S. at 472-73, 475.

Plaintiff argues that the Yudins purposefully availed themselves of this forum by consummating transactions in Oregon with her when she was an Oregon resident. Plaintiff argues that the Yudins were both in Oregon when they agreed to sell plaintiff's Acura Legend. Plaintiff also alleges that Kelly Yudin traveled to Oregon to help pack, move, and store plaintiff's property. Next, plaintiff claims that she and Kelly Yudin entered into an agreement in Oregon that the Yudins would store plaintiff's property until plaintiff requested that the property be sent to Argentina. Finally, plaintiff argues that the Yudins contacted her in Oregon to request a $60,000.00 loan and that both checks were drawn from banks located in Oregon. As a result, plaintiff argues that the

Yudins' efforts to remove plaintiff's property from Oregon constitute purposeful availment. The Yudins respond that their alleged conduct is the type of "fortuitous" contact that is insufficient to establish purposeful availment. I agree.

Although the Yudins traveled to Oregon on one or two occasions, their activities in the state did not create continuing obligations that tie them to this jurisdiction. First, the Yudins' activities in assisting plaintiff move, store, and sell her property does not constitute the sort of purposefully directed efforts envisioned by the Supreme Court. Burger King, 471 U.S. at 476. Rather, the Yudins' actions were discrete responses to a family member's need for assistance.

Second, although the Yudins may have formed several agreements or even verbal contracts with the plaintiff while in Oregon, the mere existence of a contract is not sufficient to constitute purposeful availment. Id. at 478. Rather, the court must further examine the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." Id. at 479.

The Yudins' loan agreement with plaintiff did not require them to take continuing actions or provide services in Oregon. Rather, the Yudins were required to mail loan payments for a finite period. See Peterson v. Kennedy, 771 F.2d 1244, 1262 (9th Cir. 1985) (use of mails or telephone "simply do[es] not qualify as purposeful

15  - OPINION AND ORDER

activity invoking the benefits and protection" of the forum) (citation omitted); <u>Van Steenwyk v. Interamerican Mgmt. Consulting Corp.</u>, 834 F. Supp. 336, 342 (E.D. Wash. 1993) (purposeful availment not established where contract was to be performed outside of forum and would not create ongoing work in forum). Moreover, the Yudins made their loan payments while plaintiff lived in Oregon, and any breach of the loan agreement or loss occurred after plaintiff moved to Argentina. Therefore, I find that the Yudins' activities did not create the type of continuing obligation required to constitute purposeful availment.

### 2. Reasonableness of Forum

Even if plaintiff could satisfy the first two elements of the specific jurisdiction test, I find that the Yudins "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316, 1322 (9th Cir. 1998) (quotation marks and citation omitted). Factors relevant in determining the reasonableness of asserting jurisdiction over a nonresident defendant include:

> (1) The extent of purposeful interjection into the forum state; (2) The burden on the defendant of defending in the forum; (3) The extent of conflict with the sovereignty of defendant's state; (4) The forum state's interest in adjudicating the dispute; (5) The most efficient judicial resolution of the controversy;(6) The importance of the forum to plaintiff's interest in convenient and effective relief; (7) The existence of an alternative forum.

F.D.I.C. v. British-Am. Ins. Co., 828 F.2d 1439, 1442 (9th Cir. 1987) (citations omitted).

As explained above, the Yudins did not significantly interject themselves into this forum's affairs. Further, the burden on defendants in litigating this case in Oregon would be greater than the importance of this forum to plaintiff's interest in convenient and effective relief. The Yudins are parents of school-aged children and Igor Yudin owns a dental practice in California. In contrast, plaintiff is a resident of Argentina and would be required to travel to the United States regardless of the forum. I do not find that this forum has a strong interest in adjudicating a case between mostly non-resident parties related to conduct that primarily occurred in another state. Plaintiff resides in Argentina, the Yudins in California, and OneBeacon is a Massachusetts corporation. As alleged, the Yudins' failure to repay loan amounts and to store and/or ship plaintiff's property in accordance with their agreements involves conduct occurring in California, not Oregon. Therefore, I do not find that the assertion of specific jurisdiction over the Yudins is reasonable.

Nonetheless, I decline to grant the Yudins' motion to dismiss. A district court may transfer any civil matter to another jurisdiction in which the matter originally could have been brought for the convenience of the parties and the witnesses. See 28 U.S.C. § 1404(a). In making the decision to transfer a case, a

17  - OPINION AND ORDER

district court must consider the convenience of the parties, the convenience of the witnesses, and the interests of justice. Id.; Sparling v. Hoffman Const. Co., Inc., 864 F.2d 635, 639 (9th Cir. 1988). Plaintiff could have brought her claims against the Yudins in California, a forum I find to be convenient and efficient, given that the alleged unlawful conduct of the Yudins occurred there, and they are subject to personal jurisdiction.

OneBeacon is a Massachusetts corporation and likely maintains sufficient contacts with California such that it could reasonably foresee being haled into court in that state. However, North Pacific is an Oregon corporation; the court is unsure whether North Pacific maintains sufficient minimum contacts with California or would otherwise object to the transfer of plaintiff's cause of action. Therefore, upon joinder of Patrick Tansy as a defendant, the court will afford North Pacific the opportunity to object to the transfer of this case.

CONCLUSION

Defendants' Motions to Dismiss (doc. 5, 19, 25) are DENIED with leave to renew. The court ORDERS the JOINDER of Patrick Tansy as a party. If Patrick Tansy refuses to join this action, plaintiff shall effectuate service upon Patrick Tansy within forty-five (45) days from the date of this order. Upon joinder of Patrick Tansy, defendant North Pacific Insurance Company is afforded ten (10) days to object to the transfer of plaintiff's

action to the United States District Court for the Northern District of California.

IT IS SO ORDERED.

Dated this  2   day of June, 2005.


                        /s/Ann Aiken
                   _____

                        Ann Aiken
                United States District Judge